IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ARCH INSURANCE GROUP, INC., a
Delaware Corporation,

                    No. 03:10-CV-801-HZ

               Plaintiff,

                    OPINION & ORDER

     v.

TRAVELERS PROPERTY CASUALTY
CO., a Connecticut Corporation,

               Defendant.


Peter J. Viteznik
Kilmer Voorhees & Laurick
732 NW 19th Avenue
Portland, OR 97209

      Attorney for Plaintiff


1 - OPINION & ORDER

Thomas Lether
Cole, Lether, Wathen, Leid & Hall, P.C.
1000 2nd Avenue, Suite 1300
Seattle, WA 98104-1082

     Attorney for Defendant

HERNANDEZ, District Judge:

     Defendant Travelers Property Casualty, Co. ("Travelers") moves for summary judgment against plaintiff Arch Insurance Group, Inc. ("Arch"). Arch cross-moved for summary judgment against Travelers. I grant Travelers's motion and deny Arch's motion.

## BACKGROUND

     Plaintiff Arch seeks to recover indemnity and defense costs from defendant Travelers. In 2007, general contractor Turner Construction ("Turner") led a project at Sacred Heart Hospital in Eugene, Oregon. Compl. ¶5. Long Painting and 2G Inc. were hired as subcontractors for the project. Id. On April 11, 2007, Duane Strickland, an employee of 2G, was injured on the project when a stack of steel doors fell on him. Def.'s Memo. in Supp. of Mot. for Summ. J. ("Travelers MSJ"), 2. The doors had been painted by Long Painting. Decl. of Thomas Lether in Supp. of Def.'s Mot. for Summ. J. ("Lether Decl.") Ex. B ("Strickland Complaint") at ¶4. Strickland and a fellow 2G employee had been removing them from a contraption that held the doors. Id. In March 2008, Strickland filed suit against Turner and Long Painting in Multnomah County Court, Case No. 0803-04830 ("Strickland case"). Compl. ¶9. Strickland alleged that defendants Turner and Long retained the right to and had actual control of the "work, instrumentality or condition" that caused harm to Strickland. Strickland Complaint at ¶¶10-11.

     In their subcontracts, both Long Painting and 2G had agreed to name Turner as an

2 - OPINION & ORDER

additional insured on a primary and non-contributory basis.  Lether Decl. Exs. J at 15, H at 41.

Turner tendered a claim for defense and indemnity to plaintiff Arch, Long Painting's insurer, and

defendant Travelers, 2G's insurer.  Id. at ¶10.  Travelers refused to tender defense and indemnify

Turner in the Strickland case.  Travelers MSJ, 9.  Long Painting filed a third-party complaint

against 2G in July 2008.  Lether Decl. Ex. C.  But about six weeks later, the third-party

complaint was voluntarily dismissed by Long Painting.  Id. at Ex. L.  The Strickland case settled

in March 2009 for $350,000, which Arch paid in full.  Id.  Arch now seeks contribution from

Travelers to recover the settlement and defense costs in the Strickland case.  Id.  Arch has

brought two claims against Travelers: (1) a declaratory judgment that Travelers was obligated to

defend Turner in the Strickland case and (2) breach of contract for when Travelers refused to

defend Turner in the Strickland case as an assignee of Turner.  Compl. ¶¶12, 15.

STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact

and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The

moving party bears the initial responsibility of informing the court of the basis of its motion, and

identifying those portions of "'the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence

of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting

Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine

issue of material fact, the burden then shifts to the nonmoving party to present "specific facts"

showing a "genuine issue for trial."  Fed. Trade Comm'n v. Stefanchik, 559 F.3d 924, 927-28

3 - OPINION & ORDER

(9th Cir. 2009) (internal quotation omitted).  The nonmoving party must go beyond the pleadings

and designate facts showing an issue for trial.  <u>Celotex</u>, 477 U.S. at 322-23.

The substantive law governing a claim determines whether a fact is material.  <u>Suever v.</u>

<u>Connell</u>, 579 F.3d 1047, 1056 (9th Cir. 2009).  The court views inferences drawn from the facts

in the light most favorable to the nonmoving party and draws all reasonable inferences in that

party's favor.  <u>Long v. City & County of Honolulu</u>, 511 F.3d 901, 905 (9th Cir. 2007).

If the factual context makes the nonmoving party's claim as to the existence of a material

issue of fact implausible, that party must come forward with more persuasive evidence to support

his claim than would otherwise be necessary.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>,

475 U.S. 574, 587 (1986).

DISCUSSION

Defendant Travelers has moved for summary judgment on both of plaintiff Arch's claims.

Although not expressly stated, plaintiff Arch also moves for summary judgment on both its

claims as well.[1]  I will address the arguments in both parties' motions together.

A.      Duty to Defend in the Strickland Case

Arch alleges that Travelers had a duty to defend Turner in the Strickland case.  "Whether

an insurer has a duty to defend an action against its insured depends on two documents:  the

complaint and the insurance policy.  An insurer has a duty to defend an action against its insured

if the claim against the insured stated in the complaint could, without amendment, impose

liability for conduct covered by the policy."  <u>Ledford v. Gutoski</u>, 877 P.2d 80, 82 (Or. 1994)

---

[1]  Arch has asked for several findings as a matter of law, all of  which imply that it moves
for summary judgment on both of its claims.

4 - OPINION & ORDER

(citations omitted).  From the face of the complaint, an insurer should be able to determine whether it has a duty to defend.  Id.  "The insurer has a duty to defend if the complaint provides *any basis* for which the insurer provides coverage."  Id. at 83 (emphasis in original).  Any ambiguity in the complaint with respect to whether the allegations could be covered by the policy must be resolved in favor of the insured.  Id.

I begin by reviewing the complaint in the Strickland case.  Under his claims for negligence, Strickland alleged that "defendants [Long Painting and Turner] had control of and responsibility for the risk producing activity or condition".  Strickland Complaint at ¶9.  Other paragraphs in support of the negligence claim state that "defendants retained the right to control the work, instrumentality or condition causing harm to plaintiff", "defendants actually controlled the work, instrumentality or condition causing harm to plaintiff", and that Long Painting and Turner were negligent.  Id. at ¶¶10-13.  2G, Strickland's employer is not mentioned directly in the negligence claims.

Arch argues that the complaint is ambiguous as to 2G's fault because fault can be implied from the following allegations: (1) Strickland was employed by 2G, (2) 2G was a subcontractor, and (3) Strickland was instructed to move doors that had been painted by Long Painting.  Id. at ¶¶2-4.  I do not agree that fault can be implied by the fact that Strickland was an employee of 2G or that he had been instructed to move the doors.

Arch further argues that the complaint was ambiguous and that 2G was implicated in the complaint.  Arch cites to two cases in which courts in this district have found the complaint to be ambiguous in terms of alleging fault.  Tudor Ins. Co. v. Howard S. Wright Constr. Co., 2005 U.S. Dist. LEXIS 45257, Case No. 04-480-ST, (D. Or. Feb. 18, 2005); Hoffman Constr. Co. v.

5 - OPINION & ORDER

Travelers Indem. Ins. Co., 2005 U.S. Dist. LEXIS 39752, Case No. 05-456-AA (D. Or. Nov. 28, 2005).  In Tudor, the complaint alleged that the general contractor (Wright) breached its duty to ensure that the subcontractor employee (McRobbie) and subcontractor (Campbell Crane) could safely disassemble the crane.  Tudor, 2005 U.S. Dist. LEXIS 45257, at *2-3.  The Tudor court found that the complaint was ambiguous as to whether Wright failed to ensure that Campbell Crane complied with safety standards when disassembling the crane.  Id. at *4.  In Hoffman, a subcontractor employee (Bremmer) alleged that temporary steps leading up to a metal floor had caused his injuries.  Hoffman,  2005 U.S. Dist. LEXIS 39752, at *2.  ATG, the subcontractor who built the temporary steps, was not mentioned in the complaint.  Id.  The Hoffman court found the complaint ambiguous because unidentified nonparties had been alleged and there were no allegations as to who was responsible for the temporary steps.  Id. at *12.

Defendant Travelers relies on a more recent case in this district to rebut Arch's assertion that the Strickland case complaint was ambiguous.  Clarendon Nat'l Ins. Co. v. Am. States Ins. Co., 688 F. Supp. 2d 1186, 1187 (D. Or. 2010).  In Clarendon, a subcontractor employee had fallen from the second story of a house during a remodel project.  Id. at 1188.  Clarendon, the general contractor's insurance company, sought contribution from American States, the subcontractor's insurance company, for the $1 million settlement.  Id.  The Clarendon court found that there was no duty to defend because the complaint assigned sole responsibility to Providence, the general contractor.  Id. at 1192.  There were no express allegations, nor allegations by implication, that the subcontractor was responsible for the injury.  Id.

Here, the Strickland case complaint does not expressly allege 2G was negligent, so the inquiry focuses on whether 2G's fault is implied.  Arch cites the following allegations of

6 - OPINION & ORDER

negligence against Turner to show that 2G was implicated: Turner failed to properly instruct and supervise workers to safely store and move the doors, failed to use all means to safely store and remove the doors, and failed to have the place of employment inspected for unsafe conditions. Strickland Complaint at ¶13. These allegations pointed out by Arch do not implicate 2G. Even the allegations for negligence against Long Painting, the other subcontractor, do not implicate 2G.[2] The allegations in the complaint are not ambiguous as to who was responsible and had control over situation that caused Strickland's injury. Strickland made it clear that Turner and Long Painting were the parties responsible. Id. at ¶¶9-17.

Finally, Arch urges you to look at the subcontract to show that 2G assumed responsibility for safety of its workers on the job site. Pl.'s Opp. to Travelers MSJ ("Arch Opp."), 18. However, as stated earlier, the analysis of whether there is a duty to defend arises from the complaint and insurance policy. The subcontract between Turner and 2G is not relevant to the inquiry. At oral argument, Arch conceded that there is no duty to defend if only the complaint and policy are reviewed. In summary, I find that Travelers did not have a duty to defend.

B.      Duty to Indemnify in the Strickland Case

The duty to indemnify is separate from the duty to defend. "Even when an insurer does not have a duty to defend based on the allegations in the initial complaint, the facts proved at trial on which liability is established may give rise to a duty to indemnify if the insured's conduct is covered." Ledford, 877 P.2d at 84 (citation omitted). "[T]he duty to indemnify is established by

---

[2]Strickland alleged that Long Painting failed to secure the doors after painting, failed to warn workers attempting to move the doors, failed to instruct and supervise workers in safely storing the doors, and failed to inspect the work site to ensure that the doors were safely stored. Strickland Compl. at ¶12.

7 - OPINION & ORDER

proof of actual facts demonstrating a right to coverage." Northwest Pump & Equip. Co. v.
American States Ins. Co., 925 P.2d 1241, 1243 (Or. Ct. App. 1996). Unlike the duty to defend,
the analysis for whether there is a duty to indemnify is not limited to the complaint and policy.
See Ledford, 877 P.2d at 84 (evidence at summary judgment consisted of the complaint,
existence of settlement, and an affidavit from defendant's attorney). A party is entitled to
summary judgment with respect to the duty to indemnify if there is no genuine dispute of
material fact regarding the right to coverage.

Travelers raises several arguments in support of its motion for summary judgment: (1)
Turner is not an additional insured for the underlying incident involving Strickland, (2) if Turner
is an additional insured, Travelers's policy provides only excess coverage, which is effective
once other policies have been exhausted, and (3) Arch's policy, which names Turner as an
additional insured, has not been exhausted and thus, Travelers's policy is not applicable.
Travelers MSJ, 9. I will use this framework for my analysis of whether Travelers has a duty to
indemnify. Arch's cross motion for summary judgment is essentially the mirror opposite of
Travelers's arguments. Pl.'s Memo. in Supp. of Mot. for Summ. J. ("Arch MSJ"), 1-2.

        1.       Turner as an Additional Insured Under the 2G Policy

The relevant insurance policy was issued by Travelers to 2G. Lether Decl. Ex. G ("2G
Policy"). As subcontractors, 2G and Long Painting were required to name Turner as an
additional insured on their commercial general liability policies; and that these policies would
provide primary, non-contributory insurance to Turner. Travelers MSJ, 5. The 2G policy
included an endorsement for "Blanket Additional Insured (Contractors)" which modified the
commercial general liability policy. 2G Policy, 51.

8 - OPINION & ORDER

Travelers asserts that Turner is not an additional insured for the underlying incident. Def.'s Memo. in Supp. of Mot. for Summ. J. ("Travelers MSJ"), 11.  Arch on the other hand, contends that Travelers has admitted that Turner is an additional insured.  Arch Opp., 13.  Arch points to a January 15, 2007 letter which states "Travelers now agrees that Turner is an additional insured subject to the terms and conditions in our policy."  Decl. of Edie Valentine in Supp. of Travelers MSJ ("Valentine Decl.") Ex. 1 at 1.  Travelers counters that the statement is limited by the phrase "subject to the terms and conditions" in the policy.  I agree with Travelers that this statement is not an admission of coverage for the Strickland incident.

Arch next points to Travelers's statements made during discovery in response to Arch's Request for Admissions: (1) "Travelers' coverage provided to Turner Construction as an Additional Insured is excess as to any other additional insurer including Arch." and (2) "Travelers provided excess coverage to Turner Construction over and above any other Additional Insurer of Turner."  Decl. of Peter Viteznik in Opp. to Travelers MSJ ("Viteznik Decl.") Ex. M at 4 and 9.  These statements were in response to requests for admissions that Travelers provides primary coverage under the 2G policy and that Turner was an additional insured according to the terms of the 2G subcontract and the 2G policy.  Id.  Once again, Arch takes a narrow view of these statements and fails to note that the statements were limited by the terms and conditions of the policy and any defenses available under the policy.  Def.'s Memo. in Opp. to Arch MSJ ("Travelers Opp."), 6-7.  I do not find that Travelers has admitted that Turner is an additional insured for the underlying incident involving Strickland.

Because there is no admission by Travelers, I now review the evidence before me to determine whether Turner is an additional insured under the 2G policy, such that the Strickland

incident would be covered.  Travelers argues that it had no duty to indemnify because the 2G policy was not triggered.  Two clauses in the 2G policy indicate when the policy applies.  The "insuring agreement" clause of the commercial general liability policy states, "[w]e will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."  2G Policy, 22 at ¶1.  The Blanket Additional Insured endorsement further specifies that coverage is provided to an additional insured (i.e., Turner) "[i]f, and only to the extent that, the injury or damage is caused by acts or omissions of you or your subcontractor in the performance of 'your work' to which the 'written contract requiring insurance' applies."  Id. at 51, ¶1.  Because Travelers issued this policy to 2G, "you" refers to 2G.  Travelers argues that the Strickland incident was not caused by acts or omissions of 2G.  Arch disagrees and presents deposition testimony that Long Painting's foreman, Bill Nash, instructed 2G's foreman, Ed Vaughn, on how to remove the doors properly from the painting jig.  Arch Opp., 8.  Vaughn on the other hand, cannot remember if Nash warned against lifting the metal track.  Id.  There is a genuine issue of material fact as to whether Long Painting warned against lifting the metal track of the painting jig.  If 2G had been given the warning by Long Painting, but failed to warn its employees, then it is conceivable that 2G's conduct was an "act" or "omission" under the 2G policy.  Thus, under this scenario, Turner could be an additional insured under the 2G policy.

Despite this genuine issue of material fact, Travelers refers to the insuring agreement clause quoted above, and argues that they are not "legally obligated" to pay the damages.  Travelers Reply, 10.  The Strickland case settlement did not involve 2G.  The only parties to the settlement were Strickland, Turner, Long Painting, and SAIF Corporation.  Lether Decl. Ex. K

10 - OPINION & ORDER

("Strickland Settlement Agreement").  Neither 2G nor Travelers were a part of the settlement.

Arch does not rebut this argument in its briefs.  I do not agree that this argument can be used to

limit Travelers's duty to indemnify.  The question of payment is limited by "legally obligated",

not the question of indemnification.  In summary, Turner may be an additional insured under the

2G policy.

            2.      Excess Coverage Under the 2G Policy

        Even if Turner is found to be an additional insured under the 2G policy, Travelers argues

that the coverage was excess in relation to the policy that Arch provided to Long Painting.

Travelers MSJ, 15.  In other words, the 2G policy would only cover payments in excess of Long

Painting's policy.  In the Blanket Additional Insured endorsement, paragraph three is at the center

of this dispute.  Paragraph three consists of the following three sentences:

> The insurance provided to the additional insured by this endorsement is excess
> over any valid and collectible "other insurance", whether primary, excess,
> contingent or on any other basis, that is available to the *additional insured* for a
> loss we cover under this endorsement.
>
> However, if the "written contract requiring insurance" specifically requires that
> this insurance policy apply on a primary basis or a primary and non-contributory
> basis, this insurance is primary to "other insurance" available to the additional
> insured which covers that person or organization as a *named insured* for such loss,
> and we will not share with that "other insurance."
>
> But the insurance provided to the additional insured by this endorsement still is
> excess over any valid and collectible "other insurance", whether primary, excess,
> contingent or on any other basis, that is available to the additional insured when
> that person or organization is an *additional insured* under such "other insurance".

Id. at ¶3 (emphasis added).  Travelers and Arch heavily dispute the meaning of paragraph three.

        Travelers contends that the three sentences in paragraph three are interpreted as follows:

(1) the 2G policy insurance provided to Turner is excess over all other insurance available to

11 - OPINION & ORDER

Turner as an *additional insured*, (2) if required by written contract, the 2G policy insurance provided to Turner is primary and non-contributory (i.e., not excess) in comparison to other insurance in which Turner is the *named insured*, but (3) the 2G policy insurance is still excess to other insurance available to Turner as an *additional insured*. Travelers MSJ, 16. Travelers makes an important distinction among the three sentences as to when Turner is the named insured versus the additional insured. In short, Travelers advocates an interpretation of paragraph three that makes the 2G policy excess to policies in which Turner is also an additional insured.

Arch argues that paragraph three is ambiguous and contradictory because the third sentence "tak[es] away the grant of additional insured coverage contained in the first two clauses." Arch MSJ, 8. I do not agree that the third sentence of paragraph three is ambiguous or contradictory. The third sentence essentially re-emphasizes what has already been stated in the first sentence–that the 2G policy is excess to other insurance in which Turner is an additional insured. The second sentence changes the policy to primary and non-contributory when required by contract, as the subcontract between Turner and 2G required. The 2G policy then becomes primary and non-contributory when Turner is the named insured. In other words, the 2G policy would pay out first over Turner's own insurance. The third sentence modifies primary and non-contributory coverage by making the 2G policy excess in comparison to other policies in which Turner is an additional insured, such as the Long Painting policy provided by Arch. The result is that while 2G and Long Painting both provided primary and non-contributory coverage to Turner as an additional insured, the 2G policy is excess to the Long Painting policy.

Arch further argues that even if the 2G policy is excess to the Long Painting policy,

Travelers should be estopped or the policy should be reformed because the intent of the parties was not to include the excess language. Arch Opp., 23, 29. Travelers raises several arguments in defense: (1) Arch does not have standing to assert equitable estoppel or reformation based on mistake because it was not a party to the insurance contract between Travelers and 2G, (2) Arch failed to plead equitable estoppel or reformation based on mistake, (3) the 2G policy provides primary and non-contributory coverage to Turner, as required by the subcontract, and (4) Travelers provided notice to 2G of the inclusion of the excess language. Travelers MSJ, 4-5.

The underlying assumptions to Arch's argument is that 2G was not aware that the excess language was a new addition to its policy from the prior year and that the policy does not comply with the requirement of providing primary non-contributory coverage to Turner as an additional insured. First, Arch presents evidence that when 2G was in the process of renewing its policy, Travelers did not indicate that the language in paragraph three of the Blanket Additional Insured endorsement had changed or provide 2G with the endorsement in writing prior to renewal. Arch Opp., 6. Travelers counters that a copy of the endorsement was provided to 2G according to 2G's insurance agent and the underwriting agent. Decl. of Thomas Lether in Supp. of Travelers Reply ("Second Lether Decl.") Exs. 1-2. Arch does not rebut this evidence. Second, as discussed previously, the 2G policy does provide primary and non-contributory insurance to Turner as an additional insured. I find that Arch's estoppel and reformation arguments are without merit.

### 3. Exhaustion of Long Painting's Policy

Long Painting's policy from Arch provided $1 million per incident. Lether Decl. Ex. H. The Strickland case settled for $350,000. It is undisputed that the Long Painting policy limits

were not exhausted.  Because the 2G policy is excess to the Long Painting policy, Travelers was

not obligated to contribute.

CONCLUSION

Based on the foregoing, I find that Travelers did not have a duty to defend in the

Strickland case.  There is a genuine issue of material fact as to whether Travelers had a duty to

indemnify.  However, because the policy issued by Travelers was excess to the policy issued by

Arch, and the limits of the Arch policy was not exhausted, I find that Travelers was not obligated

to contribute to the settlement of the Strickland case.  Defendant's motion for summary judgment

[#9] is granted and plaintiff's motion for summary judgment [#34] is denied.

IT IS SO ORDERED.


Dated this   23rd   day of December, 2011.


 /s/ Marco A. Hernandez
MARCO A. HERNANDEZ
United States District Judge

14 - OPINION & ORDER